UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
FREDDY V. MACAS, *individually and on behalf of
all others similarly situated*,

                                             Plaintiff,

      -against-                                   **ORDER**
                                                                           18-CV-7184-RJD-SJB

ALEX'S AUTO BODY 1 INC. and ALEXANDER
KHAIMOV, *individually and as officer, director and or
principal of Alex's Auto Body 1, Inc.*,

                                             Defendants.
-------------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

       On November 1, 2021, Plaintiff Freddy V. Macas ("Macas") filed a motion with consent of Defendants Alex's Auto Body 1, Inc. and Alexander Khaimov ("Defendants"), for final approval of the parties' settlement of Plaintiff's Fair Labor Standards Act ("FLSA") claims, as required by *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). (Joint Letter Mot. for Judicial Approval of FLSA Settlement Pursuant to *Cheeks* dated Nov. 1, 2021 ("Mot."), Dkt. No. 45). The parties consented to the undersigned's jurisdiction to decide the motion. (*See* Notice, Consent, and Reference of a Dispositive Motion to a Magistrate Judge dated Nov. 1, 2021, Dkt. No. 46; *see also* Order Granting Notice, Consent, and Reference of a Dispositive Motion to a Magistrate Judge dated Nov. 3, 2021, Dkt. No. 47). For the reasons stated below, the Court denies the motion.

FACTUAL AND PROCEDURAL HISTORY

       Macas brought this FLSA action on December 17, 2018. (Compl. dated Dec. 17, 2018, Dkt. No. 1). Following mediation, on September 17, 2020, the parties participated in a settlement conference and reached a settlement. (Minute Entry and Order dated

Sept. 17, 2020). However, in the months that followed, several issues remained in dispute. The parties requested numerous extensions of time to file a motion for settlement approval, and the Court held a second settlement conference on June 8, 2021. (Minute Entry and Order dated June 8, 2021). On November 1, 2021, the parties consented to Magistrate Judge jurisdiction, and filed a joint motion for approval of the settlement. (Mot; *see also* Settlement Agreement and Release, attached as Ex. A to Mot. ("Proposed Settlement Agreement"), Dkt. No. 45).

## DISCUSSION

I. Settlement Approval under *Cheeks*

A settlement that disposes of FLSA claims with prejudice must be approved by the Court. To approve such a settlement, the Court must find that the agreement is fair, *i.e.*, that it "reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Information Networking Computing, USA, Inc.*, 2008 WL 724155 (E.D.N.Y. Mar. 13, 2008) (internal quotations and citation omitted); *see also Cheeks*, 796 F.3d at 207 (requiring court approval in FLSA actions "to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees").

In determining whether a FLSA settlement is fair, the Court will consider the "totality of the circumstances," as well as the following general criteria: (1) "the plaintiff's range of possible recovery," in light of the "seriousness of the litigation risks faced by the parties"; (2) the amount of attorney's fees "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [does not] adversely affect the extent of the relief counsel [procured] for the clients"; (3) the nature of the waiver or release of

2

claims; and (4) the presence of any other provisions that may call into question the fairness of the agreement, such as an overbroad confidentiality provision. *See Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335–37 (S.D.N.Y. 2012) (quotations omitted); *see also Cheeks*, 796 F.3d at 206 ("Examining the basis on which district courts recently rejected several proposed FLSA settlements highlights the potential for abuse in such settlements, and underscores why judicial approval in the FLSA setting is necessary, [such as] (1) a battery of highly restrictive confidentiality provisions . . . in strong tension with the remedial purposes of the FLSA; (2) an overbroad release that would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues; and (3) a provision that would set the fee for plaintiff's attorney at between 40 and 43.6 percent of the total settlement payment[.]") (quotations omitted).

The Proposed Settlement Agreement includes a general release provision. Specifically, the release provides:

> "Macas, and Macas on behalf of his family members, heirs, executors, representatives, trustees, agents, insurers, administrators, legal representatives, successors and assigns (collectively, the "Releasors"), irrevocably and unconditionally fully and forever waive, release and discharge the Defendants, the Defendants' parents, subsidiaries, affiliates, divisions, and/or related companies, and each of their respective directors, officers, shareholders, partners, employees, managers, members, agents, attorneys, and successors of the Defendants ("Releasees") from any and all claims, demands, actions, causes of actions, obligations, judgments, rights, fees, damages, debts, obligations, liabilities and expenses (inclusive of attorneys' fees) of any kind whatsoever, whether known or unknown . . . Macas further agrees and acknowledges that Releasors are giving up any rights or claims . . . including but not limited to, those regulating employment, whether on the federal, state, or local level, including, but not limited to: (i) any and all claims under Title VII of the Civil Rights Act, as amended, the Americans with Disabilities Act, as amended, the Family and Medical Leave Act, as amended, the Fair Labor Standards Act (to the extent permitted by law), the Equal Pay Act, as amended, the Employee Retirement Income Security Act, as amended (with respect to unvested benefits), the Civil Rights Act of 1991, as amended, Section 1981 of U.S.C. Title 42, the Sarbanes-Oxley Act of 2002, as amended, the Worker Adjustment and

3

Retraining Notification Act, as amended, the National Labor Relations Act, as amended, the Age Discrimination in Employment Act, as amended, the Uniform Services Employment and Reemployment Rights Act, as amended, the Genetic Information Nondiscrimination Act of 2008, the Vietnam Era Veterans' Readjustment Assistance Act of 1974, the Occupational Safety and Health Act, the Immigration Reform and Control Act of 1986, the New York State Human Rights Law, the New York Labor Law (including but not limited to the Retaliatory Action by Employers Law, the New York State Worker Adjustment and Retraining Notification Act, all provisions prohibiting discrimination and retaliation, and all provisions regulating wage and hour law), the New York Civil Rights Law, Section 125 of the New York Workers' Compensation Law, the New York City Human Rights Law, any and all claims pursuant to any other state law and all of their respective implementing regulations and/or any other federal, state, local or foreign law (statutory, regulatory or otherwise) that may be legally waived and released; (ii) any and all claims for compensation of any type whatsoever . . . (iii) any and all claims arising under tort, contract and/or quasi-contract law . . . (iv) any and all claims for monetary or equitable relief . . . " [and] "Releasors hereby irrevocably and unconditionally fully and forever waive, release and discharge Releasees from any and all claims, whether known or unknown, from the beginning of time to the date of Macas' execution of this Agreement arising under the Older Workers' Benefit Protection Act (OWBPA) and the Age Discrimination in
Employment Act (ADEA), as amended, and its implementing regulations."

(Proposed Settlement Agreement ¶ 3(a)–(c)).

This is impermissible.[1]

"FLSA's primary remedial purpose . . . [is] to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015).

The Court in *Cheeks* addressed "an overbroad release that would waive practically any

---

[1] Separately, regarding attorneys' fees, the Proposed Settlement Agreement also provides that Plaintiff shall receive $24,301.47 of the total Settlement Amount, which is $40,000.03. Plaintiff's attorneys will receive $15,698.56, which accounts for $13,333.33 as fees, and $2,365.23 as costs. (Mot. at 2, 4). In calculating attorneys' fees, the parties failed to subtract costs from the total settlement amount. As calculated, attorneys' fees are 35.4% of the net settlement amount, *i.e.*, the total settlement amount less costs. In other words, attorneys' fees are greater than one-third of the net settlement amount. The Court need not decide whether this is reasonable and satisfies *Cheeks* review, since the general release is a sufficient basis to reject the motion.

4

possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues"—like the one here. *Id.* at 206 (internal quotations and citation omitted). Accordingly, Courts in this Circuit regularly reject waivers of "practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015). Indeed, several courts have explained that general releases waiving non-FLSA claims are impermissible. *Grullon v. Justin Pharmacy Inc.*, No. 20-CV-6122, 2021 WL 76386, at *2 (S.D.N.Y. Jan. 8, 2021); *Guerra-Alonso v. West 54 Deli, Corp.*, No. 14-CV-7247, 2015 WL 3777403, at *2 (S.D.N.Y. May 22, 2015).

Parties cite to several cases from the Southern District of New York for the proposition that general releases may be approved where the plaintiff no longer works for the defendant. This Court is not in the Southern District of New York, and the parties cite no apposite authority in the Eastern District of New York as detailed below. In any event, these cases involved *mutual* general releases. *See, e.g.*, *Grullon*, 2021 WL 76386, at *3; *Small v. Stellar Mgmt. Ltd.*, No. 1:20-CV-02540, 2020 WL 7890748, at *1 (S.D.N.Y. Oct. 21, 2020); *Khan v. Young Adult Inst., Inc.*, No. 18-CIV-2824, 2018 WL 6250658, at *2 (S.D.N.Y. Nov. 29, 2018). Here, although the parties refer to the release at issue as a "mutual general release provision" in their motion, (Mot. at 3), in effect, the terms of the proposed agreement operate unilaterally. (*See* Proposed Settlement Agreement ¶ 3). Courts in this Circuit have rejected "unilateral release[s], unlimited by time or subject matter, running in favor of defendants and a long list of related individuals and entities." *Liang Huang v. Land of Plenty Rest.*, No. 15-CIV-2136, 2018

5

WL 1989578, at *3 (S.D.N.Y. Apr. 25, 2018); *see also Barbecho v. M.A. Angeliades, Inc.*, 11 Civ. 1717, 2017 WL 1194680 at *2 (S.D.N.Y. Mar. 30, 2017). Indeed, in one of the parties' authorities, the Court rejected a general release, where the plaintiff was a former employee, since the release was not mutual in breadth or extent. *Souffrant v. 14-15 Mertens Place Corp.*, No. 19-CV-5482, 2020 WL 1166231, at *2 (S.D.N.Y. Mar. 11, 2020) (rejecting releases as "overbroad, in that they appear to extend to numerous persons and entities only tenuously connected to this action, and purport to release them not only from claims arising out of that connection but also from wholly unrelated claims[]").

As for the cases from the Eastern District of New York in which a general release was approved, they are inapposite. In *Chun Lan Guan v. Long Island Bus. Inst., Inc.*, No. 15-CV-02215, 2020 WL 1289517, at *3 (E.D.N.Y. Mar. 18, 2020), although the release in that case extended to claims under Title VII, 42 U.S.C. § 1981, the New York State Human Rights Law and the New York City Human Rights Law, that is because, unlike here, the Amended Complaint in that action included such claims. (*See* Proposed Joint Stipulation of Settlement and Release attached as Ex. 1 to Joint Letter Mot. Requesting Court Approval of Settlement dated March 5, 2020, 15-CV-02215, Dkt. No. 266-1). Again, in another of the parties' authorities, *Burgos v. Ne. Logistics, Inc.*, No. 15-CV-6840, 2018 WL 2376481, at *5–6 (E.D.N.Y. Apr. 26, 2018), *report and recommendation adopted*, No. 15-CV-6840, 2018 WL 2376300 (E.D.N.Y. May 24, 2018), the Court rejected the release because, like here, it was "asymmetrical" as to the parties. *See also id.* *5 ("[C]ourts have found that reciprocity of claims, without reciprocity of parties, is incomplete reciprocity.").

Ultimately, the Circuit has made clear that it will not approve general releases foisted upon plaintiffs in FLSA cases; the rare circumstances where such releases have

6

been approved—when the Plaintiff alleged non-FLSA claims or separate consideration is paid for the general release—are not present here.  The rationale the parties provide for a general release here amounts to nothing more than saying that because some courts have approved the arrangement, this court should also.  A claim without a warrant is unpersuasive, and in any event, the cases cited are different than the present one.

## CONCLUSION

For the reasons stated above, the Court rejects the proposed settlement as incompatible with *Cheeks*.

SO ORDERED.

*/s/ Sanket J. Bulsara*   December 20, 2021
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York